o

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ROBERT LEZA, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | |
| | § | Civil Action No. L-09-65 |
| CITY OF LAREDO, *et al.*, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Plaintiff Robert Leza has filed suit against the City of Laredo and the City Manager, Carlos Villarreal, in his individual capacity, alleging violations of his rights under the Fourth and Fourteenth Amendments. Specifically, Leza asserts claims under 42 U.S.C. §1983 for false arrest, false imprisonment, and violation of his procedural due process rights. (Dkt. 1, Attach. 2, at 22-23.) On May 18, 2010, Defendants filed a motion for summary judgment. (Dkt. 14.) Leza responded and Defendants replied. (Dkt. Nos. 24, 25.) Having considered the parties' briefs, the evidence, and the applicable law, Defendants' motion is GRANTED in part.

BACKGROUND

The following facts are either undisputed or taken in the light most favorable to Leza, the nonmovant. On October 15, 2007, Leza was arrested by the Laredo Police Department and charged with two counts of criminal mischief. (Dkt. 1, Attach.

2, at 21; Dkt. 17, at 2.) The charges were based on his alleged involvement in illegally tapping into the City's water supply. (Dkt. 1, Attach. 2, at 22; Dkt. 17, at 2.) Leza spent four to five hours in the Webb County Jail and was released on bond. (Dkt. 14, Attach. 4, at 9-11.)

On October 18, 2007, three days after his arrest, Leza's employment with the City's Public Works Department was terminated. (Dkt. 1, Attach. 2, at 22; Dkt. 17, at 3.) He filed a grievance challenging his termination with the City's grievance committee and the committee held a meeting to hear the grievance. (Dkt. 1, Attach. 2, at 22; Dkt. 17, at 3.) Leza alleges that at this meeting he demanded his grievance also be heard by the Laredo Civil Service Commission, but the City refused, stating that the Commission had not yet been established by the City Council. (Dkt. 1, Attach. 2, at 22.)

The grievance committee ultimately concluded that Leza should be reinstated to his former position with the City. (Id.; Dkt. 17, at 4.) However, the committee's decision was vetoed by Carlos Villarreal, the City Manager, and Leza's termination was upheld. (Dkt. 1, Attach. 2, at 22; Dkt. 17, at 4.)

Leza claims that the criminal mischief charges against him were dropped at an examining trial on October 31, 2007, for lack of probable cause. (Dkt. 1, Attach. 2, at 22.)

o

Leza initiated this action on July 3, 2008, in the 49th Judicial District Court, Webb County, Texas. (Id. at 4.) On June 1, 2009, Defendants removed to this Court on the basis of federal question jurisdiction. (Dkt. 1.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." Sossamon v. Lone Star State of Tex., 560 F.3d 316, 326 (5th Cir. 2009) (quoting Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." Id. (quoting Hamilton, 232 F.3d at 477). In determining whether a fact issue exists, the Court views "the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co., 336 F.3d 410, 412 (5th Cir. 2003).

The moving party bears the initial burden of showing that there is no genuine fact issue. Condrey v. Sun Trust Bank of Ga., 429 F.3d 556, 562 (5th Cir. 2005) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). Where the burden of proof

o

at trial rests on the nonmovant, the movant may satisfy its initial burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325; see also Cuadra v. Hous. Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010). "Once the moving party has demonstrated the absence of a material fact issue, the non-moving party must 'go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.'" Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)). This burden is not satisfied with conclusory allegations, unsubstantiated assertions, or by establishing "some metaphysical doubt as to the material facts." Id. (quoting Little, 37 F.3d 1075). Rather, the nonmoving party "is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). If the evidence produced by the nonmovant "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

## DISCUSSION

A. Leza's §1983 Due Process Claims

Leza alleges that his procedural due process rights were violated "when he was denied review by the Civil Service Commission." (Dkt. 1, Attach. 2, at 23.) This claim stems from a new amendment to the Laredo City Charter that was adopted in a City election held on November 7, 2006. (Dkt. 24, at 2–3.) The amendment, Section 12.03, directed the City Council to create a Civil Service Commission for employees other than police officers and firefighters, "the functions, composition, and power" of which would be determined by City ordinance.[1] The City, however, had not yet established the Commission when Leza's employment was terminated in October, 2007. (Id.) Leza argues

---

[1] The amended Section of the City Charter provides:

> The City Council shall establish a Civil Service Commission, for employees of City [sic] other than its fire fighters and police officers, whose decision on matters brought before it shall be final. Furthermore, the functions, composition and power shall be determined by ordinance. The Commission shall consist of nine (9) members. The Mayor and each member of the City Council shall nominate one member of the Commission. Each nominee must be appointed by a majority of a quorum of the City Council, but in no event by less than the affirmative vote of four Council Members. The term of the commission member shall be for the term of the officeholder who made the nomination. Upon vacancy, subsequent nomination shall be by the Mayor for mayoral appointments or the Council Member of the respective district corresponding to the original appointment.

Laredo, Tex., City Charter § 12.03 (2010), http://www.ci.laredo.tx.us/mayor-council/city-charter/charter.pdf; (Dkt. 24, Attach. 1, at 7.)

that once the amendment to the City Charter was adopted in the 2006 election, he was entitled to have the termination of his employment with the City reviewed by an "independent, unbiased Civil Service Commission," and that the City's failure to provide that review was a violation of his procedural due process rights. (Id.)

In their motion for summary judgment, Defendants argue that Leza was an "at-will" employee when he was terminated and therefore had no property interest in his employment and no entitlement to procedural due process. (Dkt. 14, at 5.) Defendants also argue that even if Leza did have a property interest in his employment, he was given notice of his termination and an opportunity to respond, and therefore received all the process he was due under the Fourteenth Amendment. (Id. at 6.)

To prevail in a procedural due process claim based on his termination, Leza must, as a starting point, show that he had a constitutionally protected property interest in his employment with the City. See DePree v. Saunders, 588 F.3d 282, 289 (5th Cir. 2009) ("The threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest."); Cabrol v. Town of Youngsville, 106 F.3d 101, 105 (5th Cir. 1997) ("Absent a property interest, there is nothing subject to due process protections and our inquiry

o

ends."); see also Rodriguez v. Escalon, 90 Fed. Appx. 776, 778 (5th Cir. 2004) ("Only government employees who can show that they have a property interest in continued employment are entitled to the procedural due process protections of the Fourteenth Amendment."). A public employee has a property interest in his or her employment "only when a legitimate right to continued employment exists." Conner v. Lavaca Hosp. Dist., 267 F.3d 426, 437 (5th Cir. 2001) (quoting McDonald v. City of Corinth, 102 F.3d 152, 154 (5th Cir. 1996)).

The Constitution, however, does not create property interests, and such interests are not incidental to public employment. Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); Bolton v. City of Dallas, 472 F.3d 261, 263-64 (5th Cir. 2006). Rather, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Roth, 408 U.S. at 577; see also McDonald v. City of Corinth, 102 F.3d 152, 155 (5th Cir. 1996) ("State law controls the analysis of whether [a plaintiff] has a property interest in his employment sufficient to entitle him to due process protection.") Thus, we turn to Texas law to determine whether Leza had a property interest in his employment with the City.

In Texas, there is a presumption that employment is at-will unless that relationship has been expressly altered by contract

o

or by "express rules or policies limiting the conditions under which an employee may be terminated." Muncy v. City of Dallas, 335 F.3d 394, 398 (5th Cir. 2003). At-will employees may be terminated at any time, and therefore have no legitimate right to continued employment and no constitutionally protected property interest in their employment. Conner, 267 F.3d at 439.

In support of their motion for summary judgment, Defendants attached the affidavit of Gilbert Sanchez, the Risk Manager for the City of Laredo.[2] (Dkt. 14, Attach. 2.) Sanchez testified that Leza has never had an employment contract with the City and that his employment for the City was always on an at-will basis. (Id. at 1.) Defendants also attached City Ordinance No. 2010-O-17, which, pursuant to the 2006 City Charter amendment, purports to establish a Civil Service Commission and abolish at-will employment for City employees.[3] (Dkt. 25, Attach. 1, at 2-6.) The ordinance shows an effective date of February 16, 2010, which indicates that prior to that date City employees were employed on an at-will basis.

---

[2] Laredo's Department of Risk Management is a division of the City's Human Resources Department. See City of Laredo, Human Resources Department, http://www.ci.laredo.tx.us/Human_Resources/HRIndex.htm, (last visited Feb. 14, 2011); (see also Dkt. 14, Attach. 2.)

[3] The ordinance applies only to City employees not subject to a collective bargaining agreement. (See Dkt. 25, Attach. 1, at 2.)

o

Oddly, the City's Code of Ordinances, which claims to be current through May 3, 2010, still states that City employees are employees at-will.[4] Thus, it seems that either the Code of Ordinances is out of date, or Ordinance No. 2010-O-17, for some reason, is not in effect. Under either scenario, Adams was an at-will employee when he was terminated in October, 2007, and therefore did not have a constitutionally protected property interest in his employment with the City.

The only evidence Leza attached to his response to Defendants' motion was a ballot and "return sheet" from the City election held on November 7, 2006.[5] (Dkt. 24, Attach. 1.) These items show that City voters passed Proposition No. 72, which added Section 12.03 to the City Charter, directing the City Council to establish a Civil Service Commission for City employees. (Id.)

Leza's evidence does not indicate that he had a property interest in his employment with the City when he was terminated

---

[4] Section 2-87.16 is titled "Employees are employees at will" and provides in part: "The provisions of this division do not and shall not affect in any way the existing and current personnel policy of the city that all employees are employees at will . . . ." Laredo, Tex., Code § 2-87.16 (2010), http://library.municode.com/index.aspx?clientId=12258&stateId=43 &stateName=Texas.

[5] The return sheet shows the number of votes received for and against each proposition on the November 7, 2006 election ballot. (Dkt. 24, Attach. 1.)

in 2007. Neither Proposition No. 72, nor, for that matter, Section 12.03 of the City Charter, purports to alter the presumption that City employees are employed on an at-will basis.[6] See Rodriguez v. Escalon, 90 Fed. Appx. 776, 778 (5th Cir. 2004) ("[In Texas,] [a]ny agreement to modify the at-will relationship . . . must be clear and specific.").

Leza has failed to raise a fact issue as to whether he had a constitutionally protected property interest in his employment with the City, a threshold requirement for a procedural due process claim. This claim will be dismissed.

B. Leza's §1983 Fourth Amendment Claims

Leza alleges that he was arrested and incarcerated without probable cause and thus "deprived of his right to be free from unreasonable seizure under the Fourth Amendment." (Dkt. 1, Attach. 2, at 23.) In his response to the City's motion, Leza makes clear that his Fourth Amendment claims are "based on the allegation that the police had no probable cause for his arrest." (Dkt. 25, at 3.) Thus, the Court construes Leza's complaint as asserting claims for false arrest and false

---

[6]   See Laredo, Tex., City Charter § 12.03 (2010), http://www.ci.laredo.tx.us/mayor-council/city-charter/charter.pdf.

o

imprisonment.[7] These claims are considered against each defendant in turn.

1. Against City Manager Carlos Villarreal

Leza has not alleged that he was physically arrested by Villarreal or that Villarreal otherwise caused his arrest. (Dkt. 1, Attach. 2, at 21–23.) In fact, the only connection in the petition between Villarreal and Leza's arrest is an allegation that Villarreal, in some unspecified way, "directed and/or influenced" Tomas Rodriguez, whose testimony was used for the criminal complaint against Leza.[8] (Id. at 21–22.) Lacking facts alleging that Villarreal somehow participated in Leza's arrest and detainment, the Court must assume that the Fourth Amendment claims against Villarreal are based solely on his supervisory position as the Laredo City Manager.

Supervisors are not vicariously liable for the actions of their employees in §1983 claims. Ashcroft v. Iqbal, 129 S. Ct.

---

[7] A claim for "unreasonable seizure" requires a showing that the seizure was conducted "in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests." Cuadra v. Hous. Indep. Sch. Dist., 626 F.3d 808, 813 (5th Cir. 2010) (quoting Glenn v. City of Tyler, 242 F.3d 307, 313–14 (5th Cir. 2001)). Leza has alleged no facts suggesting that his seizure was extraordinary. In fact, Leza testified that after he learned that there was a warrant for his arrest, he went to the police station, turned himself in, and was released on bond four to five hours later. (Dkt. 14, Attach. 4, at 9–11.)

[8] This allegation is unclear and has not been explained or supported with any evidence.

1937, 1948 (2009). Supervisory liability exists in §1983 claims when (1) the supervisor was personally involved in the constitutional deprivation, or (2) there is an adequate causal connection between the supervisor's wrongful conduct and the constitutional violation. Mesa v. Prejean, 543 F.3d 264, 274 (5th Cir. 2008) (citing Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987)).

Defendants argue that Villarreal played no role in Leza's arrest or detainment and therefore cannot be held liable for those acts under §1983. (Dkt. 14, at 7–8.) In support, Defendants point to Plaintiff's deposition of Rene Rodriguez, a detective with the Laredo Police Department. (Id.) Detective Rodriguez testified that he investigated the case against Leza, drafted the complaint outlining the allegations, took that complaint and the evidence to the District Attorney's office, and secured the warrant for Leza's arrest. (Dkt. 14, Attach. 8, at 7, 18–22.) Rodriguez testified that his only communication about the case with Villarreal was a fifteen-to-twenty minute meeting with Villarreal and Raul Casso, a City Attorney, during which Villarreal asked general questions about the status of the case.[9] (Id. at 30–32.)

---

[9] Rodriguez testified that at that meeting, Villarreal asked whether City employees were involved, whether the proper permits had been issued, and what evidence had been collected. (Dkt. 14, Attach. 8, at 31–32.) When asked whether anyone mentioned that

o

Leza does not address Defendants' argument in his response, stating only that his Fourth Amendment claims are "based on the allegation that the police had no probable cause for his arrest." (Dkt. 24, at 3.)

Leza has alleged no facts, and produced no evidence, indicating that Villarreal was personally involved in his arrest and detainment, or that his arrest and detainment was caused by Villarreal's wrongful conduct.[10] This claim will be dismissed.

2. Against the City of Laredo

Defendants argue that Leza's Fourth Amendment claims against the City fail because there is no evidence that he was arrested and detained without probable cause pursuant to an official City policy or custom. (Dkt. 14, at 8-9.) Alternatively, Defendants argue that there was probable cause for Leza's arrest. (Id. at 9.)

Typically, to prove a claim under §1983 a plaintiff must (1) establish "a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under the

---

Villarreal wanted Leza to be arrested so that he could be "held up as an example," Rodriguez said "no." (Id. at 32.)

[10] The only evidence Leza submitted in support of the Fourth Amendment claims was a document purporting to show that the criminal mischief charges were dropped at an examining trial for lack of probable cause. (Dkt. 24, Attach. 2.)

o

color of state law." <u>Lauderdale v. Tex. Dep't of Crim. Justice</u>, 512 F.3d 157, 165 (5th Cir. 2007). However, when bringing a §1983 claim against a municipality, the plaintiff must also satisfy the requirements set forth in <u>Monell v. New York City Dept. of Soc. Servs.</u>, 436 U.S. 658 (1978).

In <u>Monell</u>, the Supreme Court held that while a municipality is a "person" subject to suit under §1983, it is not liable on the basis of respondeat superior.[11] <u>Id.</u> at 690-91. Rather, a municipality is only liable under §1983 for acts that are directly attributable to it through some "official action or imprimatur." <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001). Thus, to establish municipal liability under §1983, a plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." <u>Valle v. City of</u>

---

[11] Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Houston, 613 F.3d 536, 541–42 (5th Cir. 2010) (quoting Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002)).

The culpability and causation requirements for municipal liability under §1983 are rigorously enforced. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 415 (1997) ("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior."). Culpability is established by the existence of an official policy. Peterson v. City of Fort Worth, 588 F.3d 838, 847 (5th Cir. 2009). The policy itself must be unconstitutional, or, if not, it must have been adopted "with deliberate indifference to the known or obvious fact" that the constitutional violation at issue would result. James v. Harris Cnty., 577 F.3d 612, 617 (5th Cir. 2009) (quoting Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 309 (5th Cir. 2004)). "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it 'must amount to an intentional choice, not merely an unintentionally negligent oversight.'" Id. at 617–18 (quoting Rhyne v. Henderson Cnty., 973 F.2d 386, 392 (5th Cir. 1992)). Plaintiffs must also satisfy a heightened causation standard. Valle, 613 F.3d at 546. This standard is satisfied by showing that the municipality's official policy was the "moving force" behind the plaintiff's constitutional violation. In other words, there must be "a

o

direct causal link" between the policy and the constitutional violation. Peterson, 588 F.3d at 848.

An "official policy" can exist in various forms. In its more traditional form, it consists of a "policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." Pineda, 291 F.3d at 328 (quoting Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). A policy is also deemed to exist when there is a "persistent widespread practice of City officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." Id. (quoting Webster, 735 F.2d at 841). In the latter scenario, actual or constructive knowledge of the custom must be attributable to the municipality's governing body, "or to an official to whom that body has delegated policy-making authority." Id.

To support that there is no evidence of an official custom or policy, Defendants point to Plaintiff's deposition of Detective Rene Rodriguez. (Dkt. 14, at 8.) In his deposition, Rodriguez provides a fairly detailed account of his work on the criminal mischief case against Leza. He explains how the case came about, his investigation, and the decision to take the

o

complaint and evidence to the District Attorney's office. (Dkt. 14, Attach. 8.) Defendants' argument, though not explicitly stated, appears to be that if Leza was arrested without probable cause pursuant to an official City policy, there would be some evidence of that policy in Rodriguez's deposition testimony, and, of course, that there is none.

Leza has failed to address the Monell issue altogether. He does not allege any City policy or custom in his complaint, nor did he address Defendants' argument in his response. While the Court considers Detective Rodriguez's deposition testimony alone as insufficient to satisfy the City's initial burden on summary judgment, there remains a serious question whether Leza has a viable claim against the City. As stated above, he has not even pled such a claim, and it is doubtful whether Leza can produce evidence that the City has a general policy of falsely arresting persons. The Court will defer considering whether Leza was arrested without probable cause until the issue of City liability is resolved. If the City is not legally responsible, the absence of probable cause would become irrelevant.

CONCLUSION

To summarize, Leza's due process claims against the City of Laredo and Carlos Villarreal are DISMISSED. Leza's Fourth Amendment claims against Villarreal are also DISMISSED. With respect to the Fourth Amendment claims against the City, Leza is

ORDERED to produce some colorable evidence of an official policy capable of subjecting the City to liability under §1983. Leza shall file his response no later than June 13, 2011.

DONE at Laredo, Texas, this 26th day of May, 2011.

George P. Kazen
Senior United States District Judge